Mr. Justice Clayton
delivered the following opinion.
I agree with the conclusion of the chiéf justice in this case..
All the court concur in the opinion, that the contract of purchase is not valid as to R. M. Johnson. It is an uniform principle of a court of equity, that when it decrees a rescission of a contract, it places.the parties as nearly as possible in statu quo. This is especially so, when a contract is avoided. The court endeavors to place the parties in the situation they respectively occupied before the contract was entered into. Fitzgerald v. Reed, 9 S. & M. 103. In the case just cited, the contract was set aside by this court, because of the want of mental capacity in the purchaser. The want of mental capacity to make a contract, has the same effect with a want of power. In either event, the contract is invalid, because of the want of consent of those who have legal power and capacity to act in the given case. When the contract is avoided in consequence thereof, each party is bound to give up all advantage derived under it. The duty of restitution necessarily follows from the total dissolution of the contract.
This is a case of special and limited authority, and the party dealing with the agent must look to the extent of his power. If he permits the authority to be transcended, the loss will not fall on the party who gave the authority. He has marked the limit to which he is willing to be bound by his agent, and the law will not bind him farther. I do not think this case is complicated with the question of fraud, or of notice, farther than the notice furnished by the power of attorney itself. In my view, it is a naked question of excess of power. When it is *406 declared, that the power has riot been pursued, the contract is not binding upon the principal, and if another person has gained any advantage from the unauthorized act of the agent, he must give it up.
There is no doubt in my mind, but that the contract is binding upon B. F. Johnson, if the state chooses so to regard it; or he is answerable to it in damages, for any'injury it may sustain, by reason of his unauthorized act. As to him it may confirm or set aside the sale at pleasure, and as it may best accord with its interests. As to R. M. Johnson the sale is set aside, and the state is bound to refund his money to him, if the payment were in money, if not, the value of what was paid.
The decree is reversed, and cause remanded for farther proceedings.
Mr. Justice ThacheR
delivered the following opinion.
The facts of this case will be found contained in the bill of R. M. Johnson, and the affidavit of B. F. Johnson. R. M. Johnson alleged that a sale of certain land, a part of which was contained in section thirty-two, township nine, north, range four, west, being about to be sold under a decree in chancery, and he being desirous to purchase the same, he verbally informed B. F. Johnson of his desire, and directed him to bid it in for him at the sale; and he subsequently wrote B. F. Johnson from Kentucky reiterating his directions particularly as to the tract to be purchased for him; but that B. F. Johnson, without his authority, bid off a tract of land in section thirty-one, and returned R. M. Johnson as the purchaser; and borrowed money in the name of R. M. Johnson whereby to make the required first payment for the purchase money, and executed a bond to the governor of the state to secure the balance of the purchase money.
B. F. Johnson stated in his affidavit, that before R. M. Johnson left for Kentucky, he verbally instructed him to purchase the tract of land contained in said section thirty-two, and after-wards reiterated this particular direction by letter; that the said tract in section thirty-two was offered for sale,, and bid in by the *407 state; that a tract in section thirty-one was offered and bid in by him in the name of R. M. Johnson, “ without any authority from said Johnson direct or indirect, express or implied; ” that “ prior to said sale, he contemplated purchasing said half section thirty-one, provided it could be had at a price that was reasonable, and not beyond his means, but when it was offered, he was opposed in the bidding by some malicious neighbor; and believing it was necessary at the moment of the sale to purchase said half section thirty-one to cut off competition for said section thirty-two, and thereby be enabled to purchase the portion of land in said section thirty-two, which said Johnson wanted; and believing, under the circumstances, that it would be to the interest of said Johnson to have said half section thirty-one, and believing that said Johnson, or some of his brothers, would be willing to take said half section thirty-one, if he bid it off in said Johnson’s name, and being determined that said malicious neighbor should not outbid him, who was a bankrupt, and whom he did not believe either would or could comply, if he succeeded in the purchase; ” that said R. M. Johnson refused to sanction his purchase of said tract in section thirty-one, and has never since done so; and that he “borrowed the amount of money necessary for the first payment on said section thirty-one in the name of said Johnson, and paid the same to the commissioner, who paid it into the state treasury.”.
The foregoing contains the whole history and all the facts of the case. And from this statement of facts, it is obvious that B. F. Johnson, in purchasing the tract contained in section thirty-one in the name of R. M. Johnson, acted without authority from R. M. Johnson, and consequently his act could not bind R. M. Johnson as the principal of B. F. Johnson, the agent. For where an authority is particular, the agent must pursue it, and if the act vary from it, the agent departs from his authority, and what he does is void as to his principal. Dunlap’s Paley’s Agency, 178; Story’s Agency, § 176. But it is another matter whether B. F. Johnson is not responsible to the state for the acts done for the contract of purchase of the tract in section thirty-one. It is well settled, that “ whenever a party under *408 takes to do any act, as the agent of another, if he does not possess any authority from the principal, or if he exceeds the authority delegated to him, he will be personally responsible therefor to the person with whom he is dealing for or on account of his principal. Story on Agency, § 264, and note 3. There is nothing to show that the commissioner was informed that B. F. Johnson had not authority to purchase the tract in section thirty-one, and it no where appears that either he or the state participated in the fraud attempted to be practised upon R. M. Johnson. It was the ordinary case of a person bidding for property at a public sale, and subsequently stating himself to have therein acted as an agent for another, and it turns out that he had no such authority, or that he exceeded his authority. In such case, it is universally held that the supposed agent is considered as making the purchase on his own account, and may be sued as a purchaser. Story on Agency, supra Hampton v. Speckenagle, 9 Serg. & Rawle, 212. In some cases of authority, it is laid down, that if a person represent himself as having authority to do an act, when he has not, and the other side is drawn into a contract with him, and the contract becomes void for want of such authority, the damage is the same to the party who confided in such representation, whether the party making it, acted with a knowledge of its falsity or not. Story, Agency, p. 262, note 1. The agent undertakes for the truth of his representations, and his liability is put upon the general ground that he acted without authority. 3 Johns. Cas. 70; 8 Wend. 494; 16 Mass. 461.
Another question arises out of the fact that B. F. Johnson, in making the purchase, paid one third of the purchase money in cash, which money he had obtained upon the credit of R. M. Johnson, and R. M. Johnson now claims that the state shall refund the same to him. In his bill, R. M. Johnson merely states that B. F. Johnson borrowed the money in his name, and executed for it a note as his agent; and B. F. Johnson merely admits that he did borrow the amount upon R. M. Johnson:s credit. It appears from the record, that B. F. Johnson represented himself to the commissioner in chancery, who was au *409 thorized. to make the sale, as the agent of R. M. Johnson, for the purpose of purchasing the tract of land in section thirty-one, which representation B, F. Johnson himself now states to have been false. From this it is clear, that the commissioner in chancery was imposed upon and defrauded by B. F. Johnson. The commissioner was an officer of the chancery court, and there is no reason to believe, from the facts presented, that he had any knowledge whatever that B. F. Johnson was acting in bad faith either to the commissioner or his pretended principal, R. M. Johnson. The proof is, that subsequent to the completion of the sale, R. M. Johnson refused to sanction the acts of B. F. Johnson, but the state was not informed, through her officers, of the fraud practised by B. F. Johnson until R. M. Johnson filed his petition to rescind the sale. Hence it is manifest, that the state was not a participator in the fraudulent contract of B. F. Johnson. R. M. Johnson intrusted him with the amount of money now in controversy; he used the money for his own purposes, for he says that “he contemplated purchasing the tract in section thirty-one, provided it could be had at a price within his means, and the legal effect of his purchasing for R. M. Johnson was to make himself fhe purchaser; he misapplied the money, "and was thereby guilty of a breach of trust as between himself and R. M. Johnson; and B. F. Johnson having made himself liable for the purchase money of the land, and paid the first instalment thereon, according to the terms of the sale, without any fraudulent participation by the state, the latter is only responsible to B. F. Johnson for the money paid by him, because the law, under such circumstances, casts the entire contract upon the agent. R. M. Johnson must look to B. F. Johnson for the damages consequent upon his breach of agency, trust and duty. B. F. Johnson paid this money fraudulently to the state, but R. M. Johnson cannot recover it from the state, unless the state can be shown to have been cognizant of the fraud, which is not pretended in the record. This is the only state of case where it could be so recovered under these circumstances, unless, indeed, the money had been stolen from R. M. Johnson, and he could identify it.
*410 An agent, made so for a particular purpose and with limited power, cannot bind his principal if he exceed his power, and whoever deals with such an agent, takes the peril of the contract being authorized by the principal. But we do not pretend to hold R. M. Johnson to the contract. R. M. Johnson says, that he gave his instructions verbally to B. F. Johnson to purchase the land, and afterwards wrote him from Kentucky to the same effect, and B. F. Johnson confirms his statement. There was no express letter of attorney, and all the commissioner could do was to inquire of B. F. Johnson as to his authority. Now the maxim of equity well applies here, that he who has enabled a person to do. an act which must be injurious to himSelf or to another innocent party, shall himself suffer the injury rather than the innocent party who has placed confidence in him. R. M. Johnson trusted B. F. Johnson not merely the most, but altogether. He trusted him with the agency, and he trusted him with his money; and he who trusts most, must suffer most. The contract is not rescinded, because the only contract that can stand in law is the contract with B. F. Johnson. The supposed contract with R. M. Johnson, being void and a nullity, stands as if none such was ever' made, and hence as between the state and B. F. Johnson, the money paid was his 'money, although he procured it by a breach of trust, and the bond, although executed by him as agent, was his own bond, and an action can be maintained upon it as if it were executed by him personally. 3 John. Cas. 70; 13 John. R. 307 ; 7 Wend. 315; lb. 106; 2 Greenl. 358; 2 Kent, Comm. Lect. 41, p. 631, 632; Chitty on Cont. 211 ; Story on Agency, § 264, n. 1. If the contract were void as to both B. F. Johnson and R. M. Johnson, I should have no hesitation in decreeing a repayment of the money; but so long as B. F. Johnson is or may be held liable and bound to it, I think R. M. Johnson must look to his faithless agent, in whom he reposed full confidence, for the breach of his duty and the amount he intrusted to him.
I accord with the chancellor in his decree declaring the sale and purchase void as to R. M. Johnson, but confirming it as to B. F. Johnson, and in refusing to refund the money to R. M. *411 Johnson; and this the more, since in this court it is desired by counsel of both sides, that we should decree upon the whole case as to all the parties.